IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| C. BUTLER, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-01936 |
| | § | |
| ACCESS RESTORATION SERVICES US, | § | |
| INC., *et al.*, | § | |
|     Defendants. | § | |

## JOINT PRETRIAL ORDER

The twelve remaining Plaintiffs, David Burkey, Jeremy Campbell, Malcolm Green, Natalie Miller, Trevon Potts, Cesar Romero, Tracy Rudolph, Nathaniel Ruhoff, Chas Jochum, Timothy Moffett, Warren Washington, and Rafael Louis (collectively, "Plaintiffs"), and Defendants, Global Estimating Services, Inc. ("GES"), Access Restoration Services US, Inc. ("ARS" or "ARS US"), Nathan Normoyle, and Michael Needham (collectively, "Defendants"), by and through their undersigned counsel, file this their Joint Pretrial Order as follows:

### 1.     Appearance of Counsel

<u>Plaintiffs</u>
KERRY O'BRIEN
*ko@obrienlawpc.com*
O'Brien Law, P.C.
1011 Westlake Drive
Austin, TX 78746
Telephone: (512) 410-1960

<u>Defendants</u>
LISA M. NORMAN
*lnorman@andrewsmyers.com*
VED D. CHITALE

*vchitale@andrewsmyers.com*
MATTHEW A. PYLE
*mpyle@andrewsmyers.com*
ANDREW J. CLARK
*aclark@andrewsmyers.com*
ANDREWS MYERS, PC
1885 Saint James Place, 15th Floor
Houston, Texas 77056
(713) 850-4200 – Telephone

## 2.    Statement of the Case

Plaintiffs are all former employees of GES, and they worked for GES as Field Inspectors. Plaintiffs have sued their former employer, GES, as well as another entity, ARS, and two individuals, Nathan Normoyle and Michael Needham.

GES was a property inspection and estimating company that was created and began operating in 2022, and was operated out of Spring, Texas. It was hired by law firms to inspect damaged properties and provide repair estimates that the law firms would then use to assert claims against their clients' property insurance companies. GES paid the employees, provided benefits, and set the terms and conditions of employment. Plaintiffs, as Field Inspectors (9 Plaintiffs) and/or Field Supervisors (3 Plaintiffs), were deployed to various residential and commercial properties in Louisiana, Texas, and Florida to inspect properties that were damaged in a major storm event, collect data, and document interior and exterior damage. They would use cameras, drones, moisture meters and other equipment to document the damage, which would then be provided to Field Estimators, who prepared reports regarding the damages and estimated cost of repair. GES would then provide the reports to their law firm customers for use with the law firms' claims against property insurers.

The twelve Plaintiffs claim that they are owed certain bonuses for their work, according to a bonus plan provided by GES as part of their compensation structure. Eleven of the twelve Plaintiffs also claim that they worked overtime hours for which they are entitled to compensation under federal overtime law, in the 4th Quarter of 2022 in southwest Florida in connection with their work there following Hurricane Ian. The Plaintiffs claim that the evidence will demonstrate that ARS should bear legal liability for the same things for which they claim GES is liable. The Plaintiffs further claim that two individuals, defendants Nathan Normoyle and Michael Needham, should bear personal liability for the claimed unpaid overtime wages according to the federal overtime law.

Defendant ARS denies that it is liable for the Plaintiffs' bonus claims because ARS contends that GES was not an alter ego of ARS and is an entity that is separate and distinct from ARS. Defendant ARS also denies that it owes any of the Plaintiffs overtime pay because ARS contends it was not the Plaintiffs' joint employer under federal law. Defendant GES denies that it owes Plaintiffs bonuses under the incentive plan or overtime pay under federal law. Individual Defendants also deny that they owe the Plaintiffs overtime pay under federal law because they contend that they do not each qualify as an "employer" under the federal overtime law.

3.    **Jurisdiction**

Jurisdiction is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1331 for eleven of the twelve Plaintiffs. Jurisdiction is proper for Chas Jochum, the sole Plaintiff who does not claim unpaid overtime wages, under 28 U.S.C. §1367. There are no unsolved jurisdictional questions.

4.    **Motions**

There are no pending motions.

5.    **The Parties' Contentions**

Each of the Parties has presented its own contentions, and the inclusion herein is not intended to suggest any other Party agrees to the factual statements.

**Plaintiffs' Contentions:**

a.    After meeting a criterion, Plaintiffs became eligible to participate in a quarterly bonus plan.

b.    All 12 Plaintiffs contend that they worked pursuant to a bonus plan that entitled each Plaintiff to certain bonuses based on the quantity and quality of their inspections performed in a given calendar quarter. Each Plaintiff contends that as a matter of Texas contract law, they performed under the bonus plan and earned bonuses that, to date, remain unpaid.

c.    Each Plaintiff has provided their claimed bonus amounts and the bases for those amounts in their most-recent amended FRCP 26(f) disclosures. Plaintiffs claim that Defendant Global Estimating Services, Inc. ("GES") owes them these bonuses as a matter of Texas contract law.

d.      Furthermore, 11 of 12 Plaintiffs (excluding Plaintiff Jochum, who doesn't claim overtime hours) claim that their position as a "Field Inspector" was not exempt from the overtime requirements of the Fair Labor Standards Act, based on the nature and duties of the position.

e.      Each Plaintiff claiming overtime claims that they worked unpaid overtime hours in southwest Florida during the very busy 4th Quarter of 2022 following Hurricane Ian. Each Plaintiff claiming overtime has provided a good faith estimate of their overtime hours in their most-recent amended FRCP 26(f) disclosures. Plaintiffs claim that all four Defendants are liable for these unpaid overtime wages.

f.      All 12 Plaintiffs claim that GES was acting as the "alter ego" of Defendant Access Restoration Services US, Inc. ("ARS US"), and therefore ARS US should bear legal liability for the same claims brought by Plaintiffs against GES. Furthermore, the 11 Plaintiffs claiming unpaid overtime wages contend that Defendants ARS US, Normoyle, and Needham each qualify as an "employer" for purposes of liability for unpaid overtime wages under the FLSA, based on their activities related the control of and working conditions for the Plaintiffs claiming overtime.

g.      Plaintiffs further contend that Defendant ARS US tortiously interfered with GES's decision to not pay the bonuses that the 12 Plaintiffs claim that GES contractually owes them. Plaintiffs contend that ARS US prevented GES from complying with GES's contractual bonus obligations to the 12 Plaintiffs.

h.      In the event that the trial result justifies such additional claims, Plaintiffs will post-trial move for attorney fees for the successful pursuit of their breach of contract claims pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code. Plaintiffs will also post-trial move for the award of liquidated damages and attorney fees pursuant to the Fair Labor Standard Act for successful overtime claims. Plaintiffs will also move for pre- and post-judgment interest, costs, and any other relief to which they are entitled by law.

**Defendants' Contentions:**

a.      GES is the sole employer of Plaintiffs.

b.      ARS did not exercise complete control over GES with respect to the bonus/performance and ARS did not control GES for the purpose of committing any fraud. ARS is not the "alter ego" of GES and GES is not the "alter ego" of ARS US.

c.      ARS did not interfere with Plaintiffs' incentive plan contract or employment contract; rather, it was Plaintiffs' failure to perform under the terms of the contract that resulted in nonpayment of bonuses to Plaintiffs. In Plaintiff Jochum's case, ARS additionally contends that there never was an enforceable contract under which he was owed bonuses in April 2022.

d.      ARS, Nathan Normoyle, and Michael Needham are not joint employers with GES for these Plaintiffs under the FLSA because they did not have the power to exercise significant control over the terms and conditions of Plaintiffs' employment; specifically, the right and ability to supervise and set work schedules. ARS, Nathan Normoyle, and Michael Needham did not pay Plaintiffs, hire/fire

employees, determine rate or method of payment, maintain employment records, and Plaintiffs did not work on ARS premises.

      e.     GES was the only entity that exercised substantial control over the Plaintiffs and upon whom the Plaintiffs depended economically.

      f.     If a Plaintiff achieved specified objective and subjective criteria, they became eligible to participate in the quarterly Bonus Plan.

      g.     Plaintiffs did not perform the requisite inspections as required in the first three quarters of 2022 under the Bonus Plan.

      h.     Plaintiffs did not meet the Bonus Plan criteria for quality of site documentation or customer service bonuses in the first three quarters of 2022 under the Bonus Plan.

      i.     The first tier of the quarterly Bonus Plan established a threshold number of inspections that inspectors had to complete in each quarter (120), after which they were rewarded with $150 per inspection from inspection #120 through inspection #240, plus an additional a one-time $5,000 bonus if 240 successful inspections were completed in a quarter.

      j.     Assuming Tier 1 had been reached, the second tier of the Bonus Plan was the quality of site documentation bonus, which involved a manager for GES assessing the "completeness" of files. While the rate of return of completeness to qualify for a bonus or get a bonus was not subjective (5%, no more than 2 files incomplete, zero files incomplete, respectively), determining "completeness" was

left to the General Manager and the Field Director, or at least not specified in the documents.

k.      If a field inspector qualified for this bonus under the objective criteria in Tier 2, they could earn a maximum of $4,000 per quarter. The third tier in the Bonus Plan was a customer service bonus, which involved an assessment of the results of surveys completed by property owners.

l.      If any of the Plaintiffs are owed bonuses at all, they are owed them in solely in Q4 of 2022, the only quarter in which the amount of work enabled Plaintiffs to exceed the 120 inspection count threshold for the Tier 1 quantity bonus. GES Field Manager Laura Holt calculated the amounts earned by Plaintiffs under the Bonus Plan, and Holt correctly allocated bonus amounts for all completed inspections, including the prerequisites such as threshold number of inspections, maximum inspections counted, quality of site documentation, and customer service surveys, under the Bonus Plan (Tier 1, Tier 2, and Tier 3). Laura Holt was incentivized to accurately calculate the Plaintiffs' bonuses because her bonus calculation was derived from the bonuses of the GES employees who worked under her, included the Plaintiffs in this lawsuit.

m.      Plaintiffs Warren Washington, Timothy Moffett, and Rafael Louis, who worked as supervisors at GES, are exempt employees under the FLSA by virtue of their job duties, and are therefore not eligible for overtime pay.

n.      GES adamantly disputes Chas Jochum's contention that he and GES entered into a separate, valid, enforceable oral contract in April 2022 via GES

General Manager Autumn Garibay, that guaranteed Jochum a bonus that differed from the bonus plan that all other employees worked under.

**6.    Admissions of Fact**

The following facts are stipulated between the Parties:

a.  Plaintiffs entered into employment agreements with GES.

b.  Plaintiffs were employed by GES.

c.  Each of the nine Field Estimators was each paid an annual salary of $82,000.

d.  A Plaintiff's date of eligibility to participate in the bonus plan depended on the date the Plaintiff started employment.

e.  Plaintiffs had to work for GES for at least ninety days before they became eligible to participate in the Bonus Plan.

f.  Plaintiffs worked overtime, if at all, only in Quarter 4 of 2022 when they were deployed to Florida.

g.  Eight of the eleven Plaintiffs who claim unpaid overtime wages were Field Inspectors in non-supervisory roles and were eligible to earn overtime under federal law as nonexempt employees of GES. Plaintiff Chas Jochum does not claim unpaid overtime wages.

h.  Plaintiff David Burkey was employed by Defendant Global Estimating Services, Inc. as a Field Inspector from May 31, 2022 to April 28, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

i.  Plaintiff Jeremy Campbell was employed by Defendant Global Estimating Services as a Field Inspector from May 31, 2022 to March 13, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

j.  Plaintiff Malcolm Green was employed by Defendant Global Estimating Services, Inc. as a Field Inspector from May 15, 2022 to April 28, 2023 as a Field Inspector. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

k.  Plaintiff Chas Jochum was employed by Defendant Global Estimating Services, Inc. from February 9, 2022 to April 28, 2023 as a Field Inspector. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

l.  Plaintiff Rafael Louis was employed by Defendant Global Estimating Service, Inc. from May 15, 2022 to March 13, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. He was a Field Inspector with a salary rate of $82,000 per year until June 30, 2022. On July 1, 2022, he was promoted to the position of Field Supervisor, with a salary rate of $87,000 per year. Following his promotion, he was subject to a bonus plan specific to supervisors.

m. Plaintiff Natalie Miller was employed by Defendant Global Estimating Services, Inc. from May 9, 2022 to April 28, 2023 as a Field Inspector. Her

compensation plan included a salary as well as the opportunity to earn performance-related bonuses. Her salary rate was $82,000 per year.

n. Plaintiff Timothy Moffett was employed by Defendant Global Estimating Service, Inc. from May 15, 2022 to March 13, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. He was a Field Inspector with a salary rate of $82,000 per year until June 30, 2022. On October 1, 2022, he was promoted to the position of Field Supervisor, with a salary rate of $87,000 per year. Following his promotion, he was subject to a bonus plan specific to supervisors.

o. Plaintiff Trevon Potts was employed by Defendant Global Estimating Services, Inc. from May 31, 2022 to January 4, 2023 as a Field Inspector. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

p. Plaintiff Cesar Romero was employed by Defendant Global Estimating Services, Inc. from May 23, 2022 to March 13, 2023 as a Field Inspector. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. His salary rate was $82,000 per year.

q. Plaintiff Tracy Rudolph was employed by Defendant Global Estimating Services from May 23, 2022 to April 28, 2023. Her compensation plan included a salary as well as the opportunity to earn performance-related bonuses. Her salary rate was $82,000 per year.

r.  Plaintiff Nathaniel Ruhoff was employed by Defendant Global Estimating Services from March 21, 2022 to March 13, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses.

s.  Plaintiff Warren Washington was employed by Defendant Global Estimating Service, Inc. from May 15, 2022 to March 13, 2023. His compensation plan included a salary as well as the opportunity to earn performance-related bonuses. He was a Field Inspector with a salary rate of $82,000 per year until June 26, 2022. On June 27, 2022, he was promoted to the position of Field Supervisor, with a salary rate of $87,000 per year. Following his promotion, he was subject to a bonus plan specific to supervisors.

**7.    Disputed Facts**

The following facts are disputed between the Parties:

a.  The Parties dispute whether ARS, Michael Needham and/or Nathan Normoyle were joint employers with GES for the Plaintiffs for overtime purposes based on their facts relating to their respective conduct, duties, and responsibilities.

b.  The Parties further dispute whether ARS, Michael Needham and/or Nathan Normoyle each qualify as an "employer" as to each Plaintiff who claims overtime wages, as the term "employer" is defined in the Fair Labor Standards Act.

c.  The Parties dispute whether the facts support Plaintiffs' claim that Defendant GES was acting as the alter ego of Defendant ARS.

d.  The Parties dispute whether the controlling terms of the bonus plan are set out in an email sent to the Plaintiffs by GES General Manager Autumn Garibay on

August 9, 2022. Because the Parties dispute the terms of the bonus plan that applied to the Field Inspectors, the Parties dispute the amount and method of calculation of the bonuses claimed by each Field Inspector.

e.   The Parties dispute whether the $150 per inspection for Tier 1 of the Bonus Plan applied to all inspection performed in a quarter, or only those inspections starting at #120 and continuing through #240.

f.   The Parties dispute whether a Plaintiff had to first qualify for a Tier 1 quantity bonus before they could qualify to earn a Tier 2 quality bonus.

g.   The Parties dispute whether a Plaintiff had to first qualify for a Tier 2 quality bonus before they could qualify to earn a Tier 3 customer service bonus.

h.   The Parties dispute the interpretation of the Quality and Customer Service components of the bonus plan, specifically: (1) How a bonus is calculated in a quarter when the employee becomes eligible to participate in the bonus plan mid-quarter, and (2) whether the full $4,000 Customer Service and full $4,000 Quality bonuses were potentially available to an eligible employee in a quarter.

i.   The Parties dispute the number of inspections performed by each Plaintiff in the quarter(s) for which they claim inspection bonuses.

j.   The Parties dispute the accuracy and completeness of GES's recordkeeping with respect to counting inspections.

k.   The Parties dispute the veracity and reliability of the bonus calculations for Quarter 4 of 2022 that were made by Field Manager Laura Holt.

l.   The parties disagree on the amount of overtime hours, if any, worked by each Overtime Plaintiff in Q4 of 2022.

m.   The Parties dispute whether Plaintiff Jochum was told in April 2022 by Autumn Garibay that he would be entitled to $18,000 for completing 120 inspections in a quarter.

n.   The parties dispute as to whether Defendant ARS US tortiously interfered with Defendant GES's performance of its bonus plan with Plaintiff Field Inspectors.

**8.     Agreed Applicable Propositions of Law**

a.   Joint employment may be asserted against an entity where the employee "performs work which simultaneously benefits two or more employers," by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F. R. § 791.2(b)(2) and (3) (emphasis added). The final determination is a question of law, but it depends on underlying findings of fact. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir. 1985).

b.   The Fifth Circuit applies the "hybrid economic realities/common law control test" to determine whether an individual or entity is considered a joint employer under the FLSA. *Hopkins v. Cornerstone America*, 545 F.3d 338 347 (5th Cir. 2008).

c.   The Fifth Circuit hybrid test focuses on traditional agency notions of control, which results in a narrower definition of employee than under a true economic-

realities test. *See Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118–19 (5th Cir.1993) (discussing the hybrid test).

d.  The Fifth Circuit hybrid test incorporates elements of both common law control factors and economic realities. *Perry v. VHS San Antonio Partners, L.L.C.,* 990 F.3d 918, 929 (2021)).

e.  In cases where plaintiffs allege more than one employer, the court must apply the economic realities test to each person or entity alleged to be an employer to determine if that person or entity qualifies as an employer within the meaning of the FLSA. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

f.  The common law-based test to assess control asks " 'whether the alleged employer (1) possessed the power to hire and fire the employees, (3) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Id*., quoting *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir 2012).

g.  The economic realities component of the hybrid test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *Deal*, 5 F.3d 117 at 119.

h.  No single factor controls in the economic realities component of the hybrid test, but the final determination is "based on the circumstances of the whole activity." *Wirtz*, 405 F.2d at 669, citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

i.  Specific facts that support at least some of the elements of the economic realities test are required, but "each element need not be present in every case.' " *Id*., citing *Gray*, 673 F.3d at 355-57 (emphasis added)

j.  In the multiple employer context, the FLSA's inquiry is fact specific. *Kaminski v. BWW Sugar Land Partners*, Civ. A. No. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010).

k.  Contract language that can be given a certain or definite meaning is unambiguous, and, in that situation, Courts will interpret the contractual language as a matter of law. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

l.  A Court's primary concern when interpreting contract language is to ascertain the true intent of the parties as expressed in the contract language. *Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.,* 554 S.W.3d 41, 45 (Tex. App.—Houston [1st Dist.] 2017, no pet.)

m. Courts will interpret contract language according to its plain grammatical reading unless to do so would defeat the parties' intent. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

n.  Courts consider the entire contract and harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless. *Castillo*, at 45–46

o.  Unambiguous contracts are enforced as written. *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005); *Chapman v. Abbot*, 251 S.W.3d 612, 617 (Tex. App. – Houston [1st Dist.] 2007, no pet.).

p.  The meaning of an unambiguous contract is a question of law. *Weaver v. Metropolitan Live Insurance Company*, 287 F.Supp.3d 645, 649 (N.D. Tex. 2017); *Seagull Energy E&P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006).

q.  Under well-established principles of contract law, courts must ascertain and give effect to the intentions of the parties as expressed in the instrument. *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F.Supp.2d 556, 559 (E.D. Tex. 2008); *Ideal Lease Serv. V. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983).

r.  In ascertaining the parties' intentions, courts should examine and consider the entire writing in an effort to harmonize and give effect to all of the provision of the contract so that none will be rendered meaningless. *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F.Supp.2d 556, 559 (E.D. Tex. 2008); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

s.  A court may not expand the parties' rights or obligations beyond the limits agreed upon by them in the contract. *Palestine Water Well Service, Inc. v. Washington International Insurance Company*, No. DR:15-CV-016-AM-CW, 2015 WL 12910046, *6 (W.D. Tex. 2015); *Ideal Lease Serv. V. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983).

t.  If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Kelley-Coopedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998).

u.   A contract is not ambiguous merely because the parties advance conflicting contract interpretations. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

v.   The question of whether a contract is ambiguous is a question of law for the court. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Heritage Res., Inc. v. Nations Bank,* 939 S.W.2d 118, 121 (Tex. 1999).

w.   A condition precedent to an obligation to perform under a contract must occur before there is a right to performance. *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 489 (5th Cir. 2007); *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 2 (Tex. 1976); *Beard Family P'Ship v. Commercial Indem. Ins.*, 116 S.W.3d 839, 846-47 (Tex. App. – Austin 2003, no pet.).

x.   Waiver is the intentional relinquishment of a known right and occurs when a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *First Interstate Bank of Arizona, N.A. v. Interfund Corp.,* 924 F.2d 588, 595 (5th Cir. 1991); *Trelltex, Inc. v. Intecx, L.L.C.,* 494 S.W.3d 781, 790 (Tex. App. – Houston [14th Dist.] 2016, no pet.); *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

y.   A party's express renunciation of a known right may evidence waiver. *See Id.* (citing *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. Civ. App.— Amarillo 1981, writ ref'd n.r.e.)).

z.  Silence or inaction, coupled with knowledge of the known right, for such an unreasonable period of time as to indicate an intention to waive the right, may also be evidence of waiver. *See Tenneco*, 925 S.W.2d at 643.

aa. "The objective in awarding damages for a breach of contract is to provide just compensation for the loss actually sustained by the complaining party." *Tennessee Gas Pipeline Co. v. Technip USA Corp.,* No. 01–06–00535–CV, 2008 WL 3876141, at \*5 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.), *citing Phillips v. Phillips,* 820 S.W.2d 785, 788 (Tex. 1991).

bb. The general measure of damages in a common-law breach of contract claim is just compensation for the loss or damage actually sustained, commonly referred to as the "benefit-of-the-bargain." *Bowen v. Robinson,* 227 S.W.3d 86, 96 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

cc. The "benefit-of-the-bargain" measure represents the difference between the value expected from the contract and the value actually received by the non-breaching party. *Frost Nat'l Bank v. Heafner,* 12 S.W.3d 104, 111 n. 5 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

dd. Parties to an arms-length transaction are charged with a duty to read what they sign, and the failure to do so constitutes negligence.  *Salinas v. Beaudrie*, 960 S.W.2d 314, 320 (Tex. App. – Corpus Christi 1997, no pet.); *Plains Cotton Co-op. Ass'n v. Wolf*, 553 S.W.2d 800, 803 (Tex. Civ. App. – Amarillo 1997, writ ref'd n.r.e.); *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 229-

30 (Tex. App. – Corpus Christi 1992, writ dism'd w.o.j.); see also *In re Cajun Elec. Power Co-Op., Inc.,* 791 F.2d 353, 359 (5th Cir. 1986).

ee. A party who signs a contract is charged with notice of its contents as a matter of law. *Estate of Degley v. Vega*, 797 S.W.2d 299, 304 (Tex. App. – Corpus Christi 1990, no writ); see also *In re Cajun Elec. Power Co-Op., Inc.,* 791 F.2d 353, 359 (5th Cir. 1986).

ff.  A party's subjective beliefs of the purpose of an agreement cannot contradict the intent of the parties expressed within the four corners of the document. *Williams v. Houston Plants & Garden World, Inc.,* 508 B.R. 19, 25 (S.D. Tex. 2014); *Nautical Landings Marina, Inc. v. First Nat'l Bank in Port Lavaca*, 791 S.W.2d 293, 298 (Tex. App. – Corpus Christi 1990, writ denied).

gg. When an employer has failed to keep adequate records, the plaintiff "need not prove the precise extent of uncompensated work, though he must present more than unsubstantiated assertions." *White v. Patriot Erectors, L.L.C.,* No. 23-50524, 2024 WL 3181455, at *7 (5th Cir. June 26, 2024) (citations omitted). The burden then shifts to the employer to come forward with evidence rebutting plaintiff's claims. *Id*. "The employer can discharge this burden by presenting either 'evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.' " *Id*. (Citations omitted.) "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 328 U.S. 680, 688 (1946).

hh. Under Texas law, an employer may change the terms of an at-will employment contract if he or she gives notice of the change and the employee accepts the change. *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex.2002) (citing *Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986)). "[T]o prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Hathaway,* 711 S.W.2d at 229. The employee must have knowledge of the proposed modification, which includes not only knowledge of the nature of the change, but also knowledge of the certainty of its imposition. *Id.* (citations omitted). When an employer notifies an employee of changes to the at-will employment contract and the employee continues working with knowledge of those changes, the employee has accepted those changes as a matter of law. *Id.* (citation omitted). *Moran v. Ceiling Fans Direct, Inc.,* 239 F. App'x 931, 936 (5th Cir. 2007).

ii. "It is well established that the terms of an oral contract must be clear, certain, and definite." *Knowles v. Wright,* 288 S.W.3d 136, 143 (Tex. App. - Houston [1st Dist.] 2009). In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992).

jj. Under Texas law, the essential elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d

380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)).

kk. A unilateral contract "is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Owens v. Specialized Loan Servicing, L.L.C.,* 694 F. App'x 950, 953–54 (5th Cir. 2017), citing *Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 302 (Tex. 2009) (internal quotation marks omitted).

**9.    Contested Issues of Law**

With recognition that issue of fact and issues of law may overlap, the Parties submit the following:

a.  As to Plaintiff Jochum, whether a separate oral contract existed apart from the employment agreement and Bonus Plan.

b.  Whether the conditions precedent occurred which were necessary to trigger GES's duties under the Employment Agreements and/or applicable Bonus Plan.

c.  Whether GES failed to comply with certain contractual provisions in the Employment Agreements and/or applicable Bonus Plan.

d.  Whether ARS is liable for any failure on GES's part to comply with certain contractual provisions in the Employment Agreements and/or applicable Bonus Plan.

e.  Whether Defendants Needham and Normoyle are joint employers under the FLSA.

f.   Whether Defendants Needham and Normoyle each qualify as an "employer" as that term is defined within the FLSA.

g.   Whether ARS is a joint employer under the FLSA.

h.   Whether ARS qualifies as an "employer" as that term is defined in the FLSA.

i.   Whether supervising Field Inspectors ("Field Supervisors") are exempt under the "executive exemption" of the FLSA. 29 C.F.R. §541 et seq.

j.   Whether ARS tortiously interfered with any contractual obligation of GES towards the Plaintiffs.

k.   Whether and what damages were sustained as a result of ARS tortiously interfered with any contractual obligation of GES towards the Plaintiffs

**10.   Exhibits**

Each of the Parties have attached their respective Exhibit Lists to this Joint Pretrial Order and subsequently filed their Exhibit Lists as separate documents. Plaintiffs' Exhibit List is attached hereto as **Exhibit 1**. Defendants' Exhibit List is attached hereto as **Exhibit 2**. Pursuant to Section 22 of the Court's Procedures, the Parties will submit their objections and admissions to each of the Parties' respective Exhibit Lists within seven (7) days of the date of this Joint Pretrial Order.

**11.   Witnesses**

Each of the Parties have attached their respective Witness Lists to this Joint Pretrial Order and subsequently filed their Witness Lists as separate documents. Plaintiffs' Witness List is attached hereto as **Exhibit 3**. Defendants' Witness List is attached hereto as **Exhibit 4**.

The Parties have agreed to make best efforts to determine which witnesses, if any, will be unavailable at trial once a trial date is selected. The Parties will disclose to one another at the earliest time possible whether or not any particular witness is expected to be unavailable at trial. The Parties have further stipulated to provide Deposition Designations for unavailable witnesses at a date agreeable to all Parties and the Court.

In addition, the Parties intend to call the following witnesses in their respective cases in chief:

a. David Burkey
   c/o KERRY O'BRIEN
   1011 Westlake Drive
   Austin, TX 78746
   Telephone: (512) 410-1960

Mr. Burkey is a Plaintiff. To the extent he is called to testify, Mr. Burkey may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

b. Jeremy Campbell
   c/o KERRY O'BRIEN
   1011 Westlake Drive
   Austin, TX 78746
   Telephone: (512) 410-1960

Mr. Campbell is a Plaintiff. To the extent he is called to testify, Mr. Campbell may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

c. Malcolm Green

c/o KERRY O'BRIEN
1011 Westlake Drive
Austin, TX 78746
Telephone: (512) 410-1960

Mr. Green is a Plaintiff. To the extent he is called to testify, Mr. Green may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

    d.  Natalie Miller
        c/o KERRY O'BRIEN
        1011 Westlake Drive
        Austin, TX 78746
        Telephone: (512) 410-1960

Mrs. Miller is a Plaintiff. To the extent she is called to testify, Mrs. Miller may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

    e.  Trevon Potts
        c/o KERRY O'BRIEN
        1011 Westlake Drive
        Austin, TX 78746
        Telephone: (512) 410-1960

Mr. Potts is a Plaintiff. To the extent he is called to testify, Mr. Potts may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

    f.  Cesar Romero
        c/o KERRY O'BRIEN

1011 Westlake Drive
Austin, TX 78746
Telephone: (512) 410-1960

Mr. Romero is a Plaintiff. To the extent he is called to testify, Mr. Romero may

testify regarding his employment with GES and the facts and circumstances that underlie

his claims for bonuses and overtime pay and the working conditions for the other plaintiffs

in this case.

    g.  Tracy Rudolph
        c/o KERRY O'BRIEN
        1011 Westlake Drive
        Austin, TX 78746
        Telephone: (512) 410-1960

Mr. Rudolph is a Plaintiff. To the extent he is called to testify, Mr. Rudolph may

testify regarding his employment with GES and the facts and circumstances that underlie

his claims for bonuses and overtime pay and the working conditions for the other plaintiffs

in this case.

    h.  Nathaniel Ruhoff
        c/o KERRY O'BRIEN
        1011 Westlake Drive
        Austin, TX 78746
        Telephone: (512) 410-1960

Mr. Ruhoff is a Plaintiff. To the extent he is called to testify, Mr. Ruhoff may testify

regarding his employment with GES and the facts and circumstances that underlie his

claims for bonuses and overtime pay and the working conditions for the other plaintiffs in

this case.

    i.  Chas Jochum
        c/o KERRY O'BRIEN
        1011 Westlake Drive

Austin, TX 78746
Telephone: (512) 410-1960

Mr. Jochum is a Plaintiff. To the extent he is called to testify, Mr. Jochum may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

j.  Warren Washington
    c/o KERRY O'BRIEN
    1011 Westlake Drive
    Austin, TX 78746
    Telephone: (512) 410-1960

Mr. Washington is a Plaintiff. To the extent he is called to testify, Mr. Washington may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

k.  Rafael Louis
    c/o KERRY O'BRIEN
    1011 Westlake Drive
    Austin, TX 78746
    Telephone: (512) 410-1960

Mr. Louis is a Plaintiff. To the extent he is called to testify, Mr. Louis may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

l.  Timothy Moffett
    c/o KERRY O'BRIEN
    1011 Westlake Drive
    Austin, TX 78746

Telephone: (512) 410-1960

Mr. Moffett is a Plaintiff. To the extent he is called to testify, Mr. Moffett may testify regarding his employment with GES and the facts and circumstances that underlie his claims for bonuses and overtime pay and the working conditions for the other plaintiffs in this case.

> m. Scott Jacobi
> Access Restoration Services US, Inc.
> c/o Andrews Myers
> 1885 Saint James Place, 15th Floor
> Houston, Texas
> (713) 850-4234

Mr. Jacobi is the Chief Financial Officer of ARS US. To the extent he is called to testify, Mr. Jacobi may testify regarding ARS operations, GES operations, the relationship between GES, ARS US, and ARS Canada, the roles and responsibilities of Defendants Needham and Normoyle in connection with GES and ARS US, as well as other facts in dispute of which he has knowledge.

> n. Nathan Normoyle
> c/o Andrews Myers
> 1885 Saint James Place, 15th Floor
> Houston, Texas
> (713) 850-4234

Mr. Normoyle is a Defendant in this case. To the extent he is called to testify, Mr. Normoyle may testify regarding the operations of the GES and ARS US businesses relevant to Plaintiffs' claims, his work in connection with GES and ARS US operations, as well as the work of Defendant Needham, the development of the bonus plan for the Field

Inspectors, the relationship between GES and ARS US as well as other facts in dispute of which he has knowledge.

    o.  Michael Needham
        c/o Andrews Myers
        1885 Saint James Place, 15th Floor
        Houston, Texas
        (713) 850-4234

Mr. Needham is a Defendant in this case. To the extent he is called to testify, Mr. Needham may testify regarding the operations of the GES and ARS US businesses relevant to Plaintiffs' claims, his work in connection with both operations as well as the work of Defendant Normoyle, the development of the bonus plan for the Field Inspectors, the relationship between GES and ARS US as well as other facts in dispute of which he has knowledge.

    p.  Guiseppe Gagliano
        c/o Andrews Myers
        1885 Saint James Place, 15th Floor
        Houston, Texas
        (713) 850-4234

Mr. Gagliano is one of the founding members of ARS Canada. To the extent he is called to testify, Mr. Gagliano may testify regarding ARS operations, GES operations, the relationship between GES, ARS US, and ARS Canada, the roles and responsibilities of Defendants Needham and Normoyle in connection with GES and ARS US, as well as other facts in dispute of which he has knowledge

    q.  Laura Holt
        c/o KERRY O'BRIEN
        1011 Westlake Drive
        Austin, TX 78746
        Telephone: (512) 410-1960

Ms. Holt is the former Field Supervisor for GES. To the extent she is called to testify, Ms. Holt may testify regarding her own employment with GES, others' employment with GES, the terms of the Contract, the hiring and termination of Plaintiffs, Plaintiffs' performance of the terms of the Contract, GES operations, ARS's role as to Plaintiffs' claims and Defendants' defenses, Needham's role as to Plaintiffs' claims and Defendants' defenses, Normoyle's role as to Plaintiffs' claims and Defendants' defenses, the job duties of Supervisor Field Inspectors, as well as other facts in dispute of which she has knowledge.

    r.  Lisa Moutsanides
        1238 SE Pine St. #B
        Roseburg, OR 97470

Former GES Field Inspector and a former Plaintiff in this case (settled) who will testify on her employment with GES and the facts and circumstances her claims for bonuses and overtime pay were based, as well as the working conditions for the plaintiffs in this case.

    s.  Autumn Garibay
        23770 Springwoods Village Parkway #314
        Spring, Texas 77373

Ms. Garibay is the former General Manager for GES. To the extent she is called to testify, Ms. Garibay may testify regarding her own employment with GES, others' employment with GES, the terms of the Contract, the hiring and termination of Plaintiffs, Plaintiffs' performance of the terms of the Contract, GES operations, ARS's role as to Plaintiffs' claims and Defendants' defenses, Needham's role as to Plaintiffs' claims and

Defendants' defenses, Normoyle's role as to Plaintiffs' claims and Defendants' defenses, the job duties of Supervisor Field Inspectors, as well as other facts in dispute of which she has knowledge.

      t.   John Z. Moseley
          1214 W. Dallas St.
          Houston, Texas 77019

Principal in the McClenny Moseley & Associates Law Firm who may testify on the relationship between MMA, and GES and ARS US, including ARS US's investment in MMA, and the work performed by GES and ARS US for MMA.

      u.  James McClenny
          80 Ridgelake Scenic Dr
          Montgomery, TX 77316-6933

Principal in the McClenny Moseley & Associates Law Firm who may testify on the relationship between MMA and GES and ARS US, including ARS US's investment in MMA, and the work performed by GES and ARS US for MMA.

      v.  Trevor Brill
          6320 Whirlwind Drive
          Colorado Springs, CO

Brill is a former General Manager of GES who may be called to testify on the operations of GES while he was employed, the relationship between ARS US and GES, the relationship between the MMA law firm on the one hand and GES and ARS US on the other, the work performed by Defendants Normoyle and Needham in connection with GES, the hiring of Field Inspectors, including some of the Plaintiffs, during his tenure, and the duties of a GES Field Inspector.

      w.  Lisa M. Norman

Andrews Myers
1885 Saint James Place, 15th Floor
Houston, Texas
(713) 850-4234

Ms. Norman is a shareholder at Andrews Myers, PC and one of the attorneys for Defendants. To the extent she is called to testify, Ms. Norman may testify regarding the attorneys' fees Plaintiffs seek to recover in this litigation.

x.  Kerry V. O'Brien
O'Brien Law Firm
1011 Westlake Drive
Austin, Texas 78746
(512) 410-1960

Mr. O'Brien has been sole counsel for the Plaintiffs since the inception of the case. To the extent that he is called to testify, Mr. O'Brien may testify as an expert regarding the attorney fees that Plaintiffs seek to recover in this litigation.

**12.    Settlement**

The parties have mediated this case. To date, no mutually acceptable resolution has been reached between the 12 remaining Plaintiffs and the Defendants. The parties are scheduled for a second mediation that will take place on January 6, 2024.

**13.    Trial**

The trial is to be held before a jury. The trial length is anticipated to last approximately two (2) weeks or ten (10) days. Presently, there are no expected unusual exhibits.

**14.    Juror Comprehension Initiatives**

a.  <u>Trial time limits</u>:

    i.   Plaintiffs: Plaintiffs estimate the trial will take seven (7) business days due to the fact that there are 12 Plaintiffs. Because there are 12 Plaintiffs, the Plaintiffs have concerns about the suitability of a trial time limit unless it takes into account the number of plaintiffs and does not deny a plaintiff a reasonable amount of time to present their case-in-chief solely because they came forward with their claims in a joint context with other plaintiffs.

    ii.   Defendants: Defendants believe the trial will last approximately ten (10) days. For juror purposes, Defendants believe commencing at 9:00 a.m. and concluding at 5:00 p.m. daily is appropriate.

   b.  <u>Preliminary substantive jury instructions</u>:

    i.   Plaintiffs: Plaintiffs believe that preliminary substantive jury instructions would be suitable at trial.

    ii.   Defendants:  Defendants have no objection to preliminary substantive jury instructions so long as all instructions are discussed and agreed to in advance of trial.

   c.  <u>Notetaking by jurors</u>:

    i.   Plaintiffs: Plaintiffs favor the taking of notes by jurors, especially given that this case will involve the computation of bonuses and overtime wages for 12 plaintiffs.

    ii.   Defendants: Defendants have no objection to notetaking by jurors. Notetaking is a helpful tool for some jurors.

d. <u>Trial binders for jurors to include glossary of terms, cast of characters, chronology, and key exhibits</u>:

 i. Plaintiffs: Plaintiffs favor the inclusion of such trial binders.

 ii. Defendants: Defendants do not believe trial binders for jurors will be necessary or helpful on this matter. Trial binders for jurors may lead to distraction and confusion of the issues.

e. <u>Questions by jurors during trial</u>:

 i. Plaintiffs: Plaintiffs favor allowing jurors to present questions during trial, subject to the management, oversight, and discretion of the trial judge.

 ii. Defendants: Defendants are opposed to questions during trial by the jury. There is concern such questioning would interfere with progress of the trial, cause additional confusion, and misconstrue the importance of certain facts for the jury.

f. <u>Interim statements or argument to jury by counsel</u>:

 i. Plaintiffs: Plaintiffs do not favor interim statements or arguments by counsel, and instead prefer the traditional presentation of opening and closing statements.

 ii. Defendants: Defendants are opposed to interim statements or arguments to the jury by counsel. Such interim statements or arguments would interfere with progress of the trial, cause additional confusion, and misconstrue the importance of certain facts for the jury.

**15. Additional Required Attachments**

a. <u>Motions in Limine</u>: The Standard Order *in Limine* with Proposed Amendments is attached to this Joint Pretrial Order hereto as **Exhibit 5** and filed subsequently as a separate document. The amendments are offered by Defendants. Plaintiffs do not move for the addition of any *limine* beyond that set out in the Court's Standard Order *in Limine*.

b. <u>Proposed topics and questions for examination of prospective jurors</u>: Each of the Parties have attached their respective proposed juror examination topics to this Joint Pretrial Order and subsequently filed their proposed juror examination topics as separate documents. Plaintiffs' proposed juror examination topics are attached hereto as **Exhibit 6**. Defendants' proposed juror examination topics are attached hereto as **Exhibit 7**.

c. <u>Proposed jury charge</u>: The Parties have attached their proposed Jury Charges to this Joint Pretrial Order and subsequently filed the Jury Charges as separate documents. Plaintiffs' proposed Jury Charges is attached hereto as **Exhibit 8**. Defendants' Proposed Jury Charge is attached hereto as **Exhibit 9**. Following the filing of these proposed Jury Charges, the Parties will promptly cooperate to identify agreed and disputed issues and file a consolidated Jury Charge.

d. <u>Trial memorandum of law</u>: Each of the Parties have attached their respective Trial Memorandums to this Joint Pretrial Order and subsequently filed their Trial Memorandums as separate documents. Plaintiffs' Trial Memorandum is attached hereto as **Exhibit 10**. Defendants' Trial Memorandum is attached hereto as **Exhibit 11**.

Dated this 3rd day of January, 2025.


Respectfully submitted,


_/s/ Kerry V. O'Brien_
KERRY V. O'BRIEN
State Bar No. 24038469
Southern District Bar No. 021724
_ko@obrienlawpc.com_
1011 Westlake Drive
Austin, Texas 78746
Telephone:    (512) 410-1960

_Attorneys for Plaintiffs_

_/s/ Lisa M. Norman_
LISA M. NORMAN
State Bar No. 24037190
Federal Bar No. 613906
_lnorman@andrewsmyers.com_
VED D. CHITALE
State Bar No. 24099613
Federal Bar No. 315794
_vchitale@andrewsmyers.com_
MATTHEW A. PYLE
State Bar No. 24123135
Federal Bar No. 3839342
_mpyle@andrewsmyers.com_
ANDREW J. CLARK
State Bar No. 24101624
Federal Bar No. 2996672
_aclark@andrewsmyers.com_
ANDREWS MYERS, P.C.
1185 Saint James Place, 15th Floor
Houston, TX 77056
Telephone:    (713) 850-4200

_Attorneys for Defendants_

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing has been served on all

counsel listed below on this 3rd day of January, 2025, via the U.S. District Court's ECF /

Pacer system, certified mail, and/or electronic mail.

| | |
|---|---|
| KERRY V. O'BRIEN | LISA M. NORMAN |
| State Bar No. 24038469 | State Bar No. 24037190 |
| Southern District Bar No. 021724 | Federal Bar No. 613906 |
| *ko@obrienlawpc.com* | *lnorman@andrewsmyers.com* |
| 1011 Westlake Drive | VED D. CHITALE |
| Austin, Texas 78746 | State Bar No. 24099613 |
| Telephone:    (512) 410-1960 | Federal Bar No. 315794 |
| | *vchitale@andrewsmyers.com* |
| */s/ Kerry V. O'Brien* | MATTHEW A. PYLE |
| | State Bar No. 24123135 |
| | Federal Bar No. 3839342 |
| | *mpyle@andrewsmyers.com* |
| | ANDREW J. CLARK |
| | State Bar No. 24101624 |
| | Federal Bar No. 2996672 |
| | *aclark@andrewsmyers.com* |
| | ANDREWS MYERS, P.C. |
| | 1185 Saint James Place, 15th Floor |
| | Houston, TX 77056 |