IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| C. BUTLER, *et al.*, § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> ACCESS RESTORATION SERVICES US, § <br> INC., *et al.*, § <br> Defendants. § | CIVIL ACTION NO. 4:23-cv-01936 |

## DEFENDANTS' TRIAL MEMORANDUM OF LAW

Defendants, Global Estimating Services, Inc. ("GES"), Access Restoration Services US, Inc. ("ARS"), Nathan Normoyle, and Michael Needham (collectively, "Defendants") file this Trial Memorandum of Law pursuant to this Court's Pretrial Order. Defendants have also attached this Memorandum as **Exhibit 11** to the parties' Joint Pretrial Order.

### I. ARS's LIABILITY FOR BREACH OF CONTRACT UNDER THE ALTER EGO THEORY

To prevail on a breach of contract claim against ARS, Plaintiff must prove the existence of a contract between the Plaintiffs and ARS. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019). Plaintiffs are unable to meet that burden because none of the Plaintiffs entered into a contract with ARS. They only contracted with GES. The Parties do not dispute this.

#### a. GES is not ARS's Alter-Ego

"The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases." *Birdas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) ("*Birdas II*") (citing *In re Multiponics, Inc.*, 622 F.2d 709, 724–25 (5th

Cir. 1980)). "The doctrine applies only if '(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or a wrong that injured the party seeking to pierce the veil.'" *Id.* (citing *Birdas S.A.P.I.C. v. Gov't of Turkmenistan ("Birdas I"),* 345 F.3d 347, 359 (5th Cir. 2003)). "Unlike the theory of agency, which interprets a contractual relationship, alter ego examines the actual conduct of the **parent vis-a-vis its subsidiary**." *Id.* at 416 (emphasis added). Analysis of an alter-ego theory of recovery engages with the relationship between a parent company and its subsidiary—NOT, as here, the relationship between two sister companies. *See id.* Indeed, the *Birdas* Court identified a series of factors to consider in its alter ego analysis, and each factor is premised on a parent/subsidiary relationship between the businesses. *Id.* at 418.

Historically, courts required a showing of actual fraud to support an alter ego theory of liability. *See generally Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210 (5th Cir. 1993). Courts have since expanded this interpretation to include a broader scope of "wrongs" that support a finding of alter ego, but this analysis coexists with an analysis still of the degree of control the alleged controlling entity has over the allegedly subservient company. *Birdas II*, 447 F.3d at 417–18. In essence, Courts determine whether the alleged sham entity was under complete control of the parent company. *Id*.

Here, in order to determine whether ARS is liable to Plaintiffs when there is admittedly no contract between ARS and Plaintiffs, the jury will have to find whether GES was ARS's alter ego and that ARS used its alter ego GES, to commit fraud or otherwise wrong Plaintiffs.

## II. ARS's LIABILITY UNDER EQUITABLE CAUSES OF ACTION

Plaintiffs have asserted alternative claims based on quantum meruit and unjust enrichment. Here, Plaintiffs cannot maintain such claims because this case is controlled by employment contracts entered into by each Plaintiff individually with GES. The Parties do not dispute the existence of a valid contract between GES and Plaintiffs.

"Recovery on an express contract and on quantum meruit are inconsistent." *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430 (5th Cir. 2024) (citing *Woodward v. Sw. States, Inc.* 384 S.W.2d 674, 675 (Tex. 1964)). Because the parties do not dispute that the employment contracts between Plaintiffs and GES control this case, this Court should dismiss Plaintiffs' quantum meruit and unjust enrichment claims with prejudice. It appears from the Joint Pre-Trial Order that Plaintiffs are not pursuing their unjust enrichment, quantum meruit, and estoppel claims.

## III. ARS's LIABILITY FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

"[T]he elements of tortious interference with an existing contract [are]: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

Defendants believe that the only factor in dispute here is whether ARS committed a willful and intentional act of interference with the Bonus Plan. Defendants contend that it

was Plaintiffs' failure to perform under the terms of the Bonus Plan, and not a willful, wrongful act by ARS, that resulted in nonpayment of bonuses to Plaintiffs.

### IV. JOINT EMPLOYERS UNDER FLSA – ARS, NEEDHAM, NORMOYLE

The Fifth Circuit applies the "hybrid economic realities/common law control test" to determine whether an individual or entity is considered a joint employer under the FLSA. *Hopkins v. Cornerstone America*, 545 F.3d 338 347 (5th Cir. 2008). Because this hybrid test focuses on traditional agency notions of control, it results in a narrower definition of employee than under a true economic-realities test. *See Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118–19 (5th Cir.1993) (discussing the hybrid test). This test incorporates elements of both common law control factors and economic realities. *Perry v. VHS San Antonio Partners, L.L.C.,* 990 F.3d 918, 929 (2021)). In cases where plaintiffs allege more than one employer, the court must apply the economic realities test to each person or entity alleged to be an employer to determine if that person or entity qualifies as an employer within the meaning of the FLSA *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

The test to assess agency based notions of control asks " 'whether the alleged employer (1) possessed the power to hire and fire the employees, (3) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Id*., quoting *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir 2012). The economic realities component of the hybrid test focuses on whether the alleged employer paid the employee's salary, withheld taxes,

provided benefits, and set the terms and conditions of employment. *Deal*, 5 F.3d 117 at 119. No single factor controls, but the final determination is "based on the circumstances of the whole activity." *Wirtz*, 405 F.2d at 669, citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). Specific facts that support at least some of the elements of the economic realities test are required, but "each element need not be present in every case.' " *Id.*, citing *Gray*, 673 F.3d at 355-57. In the multiple employer context, the FLSA's inquiry is fact specific. *Kaminski v. BWW Sugar Land Partners*, Civ. A. No. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010).No single factor controls, but the final determination is "based on the circumstances of the whole activity." *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669, *citing Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). (emphasis added).

The jury will need to determine whether ARS, Michael Needham and/or Nathan Normoyle were joint employers with GES for the Plaintiffs for overtime purposes based on factual findings relating to their respective conduct, duties, and responsibilities.

## V.   HOURS WORKED UNDER THE FLSA

It is well settled law that plaintiff bears the initial burden to show hours worked as a matter of "just and reasonable inference" in FLSA cases. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). When an employer has failed to keep adequate records, the plaintiff "need not prove the precise extent of uncompensated work, though he must present more than unsubstantiated assertions." *White v. Patriot Erectors, L.L.C.,* No. 23-50524, 2024 WL 3181455, at *7 (5th Cir. June 26, 2024) (citations omitted). The burden then shifts to the employer to come forward with evidence rebutting plaintiff's claims. *Id.*

"The employer can discharge this burden by presenting either 'evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.' " *Id*. (Citations omitted.) "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 328 U.S. 680, 688 (1946).

The jury will need to determine whether Field Inspector Plaintiffs met their burden to show that they worked overtime hours based on Plaintiffs' initial burden to show hours worked. The jury will then need to determine whether Defendants have discharged their burden to negate Plaintiffs' claims with rebutting evidence.

## VI. PLAINTIFFS MOFFETT, WASHINGTON, LOUIS AS BONA FIDE EXECUTIVE EMPLOYEES UNDER FLSA

The FLSA provides that employees shall not work more than forty hours per work week unless they are compensated at one and a half times their regular rate of employment. 29 U.S.C. § 207(a)(1). The FLSA also exempts workers from its overtime-pay guarantee protection, such as employees that are employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden of proof to show that it qualifies for an exemption. However, courts give FLSA exemptions a "fair reading," not a narrow reading construed against the employer. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 90 (2018).

The Department of Labor has defined a bona fide executive employee as one who is: (1) compensated on a salary basis at a rate of not less than $684 per week, exclusive of board, lodging, or other facilities; (2) whose primary duty is management of the enterprise

in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a). An employee's suggestion may be deemed to have "particular weight" even if a "higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105.

Based on supervisor Plaintiffs' discovery responses, it appears that supervisor Plaintiffs Moffett, Louis, and Washington do not dispute the first three prongs of the test for the executive exemption. Based on Plaintiffs' admissions, the only relevant legal issue for the fact finder appears to be whether the Supervisor Plaintiffs had authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees was given particular weight by GES. 29 C.F.R. § 541.100(a).

### VII.   BREACH OF CONTRACT - GES

Under Texas law, the essential elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)

(quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)

The Parties dispute whether the $150 per inspection for Tier 1 of the Bonus Plan applied to all inspection performed in a quarter, or only those inspections starting at #120 and continuing through #240. The Parties dispute whether a Plaintiff had to first qualify for a Tier 1 quantity bonus before they could qualify to earn a Tier 2 quality bonus. The Parties dispute whether a Plaintiff had to first qualify for a Tier 2 quality bonus before they could qualify to earn a Tier 3 customer service bonus. The Parties dispute the interpretation of the Quality and Customer Service components of the bonus plan, specifically: (1) How a bonus is calculated in a quarter when the employee becomes eligible to participate in the bonus plan mid-quarter, and (2) whether the full $4,000 Customer Service and full $4,000 Quality bonuses were potentially available to an eligible employee in a quarter.

A Court's primary concern when interpreting contract language is to ascertain the true intent of the parties as expressed in the contract language. *Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.,* 554 S.W.3d 41, 45 (Tex. App.—Houston [1st Dist.] 2017, no pet.) Courts will interpret contract language according to its plain grammatical reading unless to do so would defeat the parties' intent. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). Courts consider the entire contract and harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless. *Castillo*, at 45–46. Contract language that can be given a certain or definite meaning is unambiguous, and, in that situation, Courts will interpret the contractual language as a matter of law. *DeWitt*

*Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Unambiguous contracts are enforced as written. *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005); *Chapman v. Abbot*, 251 S.W.3d 612, 617 (Tex. App. – Houston [1st Dist.] 2007, no pet.). The meaning of an unambiguous contract is a question of law. *Weaver v. Metropolitan Live Insurance Company*, 287 F.Supp.3d 645, 649 (N.D. Tex. 2017); *Seagull Energy E&P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Kelley-Coopedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998). A contract is not ambiguous merely because the parties advance conflicting contract interpretations. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). The question of whether a contract is ambiguous is a question of law for the court. *Texas v. American Tobacco Co.,* 463 F.3d 399, 407 (5th Cir. 2006); *Heritage Res., Inc. v. Nations Bank,* 939 S.W.2d 118, 121 (Tex. 1999).

Under well-established principles of contract law, courts must ascertain and give effect to the intentions of the parties as expressed in the instrument. *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F.Supp.2d 556, 559 (E.D. Tex. 2008); *Ideal Lease Serv. V. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983). In ascertaining the parties' intentions, courts should examine and consider the entire writing in an effort to harmonize and give effect to all of the provision of the contract so that none will be rendered meaningless. *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F.Supp.2d 556, 559 (E.D. Tex. 2008);

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A court may not expand the parties' rights or obligations beyond the limits agreed upon by them in the contract. *Palestine Water Well Service, Inc. v. Washington International Insurance Company*, No. DR:15-CV-016-AM-CW, 2015 WL 12910046, *6 (W.D. Tex. 2015); *Ideal Lease Serv. V. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983).

A unilateral contract "is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Owens v. Specialized Loan Servicing, L.L.C.,* 694 F. App'x 950, 953–54 (5th Cir. 2017), citing *Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 302 (Tex. 2009) (internal quotation marks omitted).

Under the propositions of law above, The Court and/or the jury will have to determine whether the Bonus Plan was ambiguous as written, which party's interpretation of the terms of the bonus plan reflects the true intent of the parties, and whether the Plaintiffs performed the conditions precedent in the Bonus Plan.

As to Plaintiff Jochum, this Court and/or the fact finder will determine whether a separate oral contract existed apart from the employment agreement and Bonus Plan. "It is well established that the terms of an oral contract must be clear, certain, and definite." *Knowles v. Wright,* 288 S.W.3d 136, 143 (Tex. App. - Houston [1st Dist.] 2009). In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992).

## VIII.  DISPOSITION AND RELIEF SOUGHT

- Dismissal of Plaintiffs' breach of contract claims against ARS US

- Dismissal of Plaintiffs' breach of contract claims against GES

- Dismissal of Plaintiffs' quantum meruit claims against both ARS US and GES

- Dismissal of Plaintiffs' unjust enrichment claims against both ARS US and GES

- Dismissal of all Plaintiffs' FLSA claims against ARS US, Nathan Normoyle, and Michael Needham

- Dismissal of all non-supervisory Field Inspector Plaintiffs' overtime claims against GES.

- Dismissal of overtime claims under FLSA specifically for three Plaintiffs:
    - Timothy Moffett
    - Warren Washington
    - Rafael Louis

Respectfully submitted,

ANDREWS MYERS, P.C.

By:   /s/ *Ved D. Chitale*
      LISA M. NORMAN
      State Bar No. 24037190
      Federal Bar No. 613906
      lnorman@andrewsmyers.com
      ANDREW J. CLARK
      State Bar No. 24101624
      Federal Bar No. 2996672
      aclark@andrewsmyers.com
      VED D. CHITALE
      State Bar No. 24099613
      Federal Bar No. 315794
      vchitale@andrewsmyers.com
      MATTHEW A. PYLE
      State Bar No. 24123135
      Federal Bar No. 3839342
      mpyle@andrewsmyers.com
      1885 Saint James Place, 15th Floor
      Houston, Texas 77056
      (713) 850-4200 – Telephone
      (713) 850-4211 – Facsimile

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of January, 2025, the foregoing document was forwarded by electronic delivery/ ECF to all counsel of record.

      */s/ Ved D. Chitale*
      VED D. CHITALE