IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| C. BUTLER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:23-cv-01936 |
| ACCESS RESTORATION SERVICES US, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' 1st AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE COURT:

COME NOW, Plaintiffs Burkey, Louis, and Rudolph, and hereby submit their 1st Amended Proposed Findings of Fact and Conclusions of Law:

### PLAINTIFFS' PROPOSED FINDINGS OF FACT

1. Defendant Global Estimating Services, Inc. ("GES") is a for-profit corporation chartered in Delaware and registered to do business in the state of Texas.

2. Defendant Access Restoration Services US, Inc. ("ARS") is a for-profit corporation chartered in Delaware and registered to do business in the state of Texas.

3. Defendant Nathan Normoyle is an individual resident of the state of Texas. During the time period relevant to the claims of the Plaintiffs, he was both the President of GES and the Vice President of Global Operations of ARS.

4. Defendant Michael Needham is an individual resident of the state of Texas. During the time period relevant to the claims of the Plaintiffs, he was the Director of Field Operations for both GES and ARS.

5. Plaintiff David Burkey was employed by GES from May 31, 2022 to April 28, 2023 as a Field Inspector.

6.  Plaintiff Tracy Rudolph was employed by GES from May 23, 2022 to on or about April 28, 2023 as a Field Inspector.

7.  Plaintiff Rafael Louis was employed by GES from May 15, 2022 to March 13, 2023. He worked from May 15, 2022 to June 26, 2022 as a Field Inspector. On June 27, 2023, he was promoted to the Field Supervisor position and continued in that position until the end of his employment.

8.  In addition to an incentive compensation plan, Plaintiffs Burkey and Rudolph were paid a salary of $82,000 per year, for hours that would fluctuate weekly.

9.  As part of their employment compensation plan and after completing three months of employment, David Burkey and Tracy Rudolph were eligible to participate in the company's quarterly bonus plan based on the company's bonus matrix. Both Burkey and Rudolph first became eligible to participate in the Bonus Matrix bonus plan in Q3-2022. After three months of employment, Rafael Louis were eligible to participate in the Field Supervisor Bonus Plan.

10. On August 9, 2022, GES General Manager Autumn Garibay emailed the bonus matrix to the company's Field Inspectors, including Burkey and Rudolph, as well as the company's Field Supervisors, including Louis. The bonus matrix provides the terms by which Burkey and Rudolph could earn quarterly bonuses with GES and the terms of the bonuses to be earned by Field Inspectors supervised by Louis. None of the Plaintiffs received any other version of the Bonus Matrix other than the one provided by Garibay in that email.

11. Pursuant to the bonus matrix in Garibay's August 9, 2022 email, there are three types of bonuses that could be earned by the Field Inspector in each calendar quarter:

    a.  Tier 1 – Quantity Bonus. A Field Inspector began earning a Quantity Bonus when they reached 120 inspections in a calendar quarter. For each inspection above 120 in the quarter, the Field Inspector earned $150 per inspection. In addition, should the Field Inspector complete at least 240 inspections in the quarter, the Field Inspector earns an additional $5,000 bonus for that quarter.

    b.  Tier 2 – Quality Bonus. A Field Inspector earned a $2,000 bonus for not having 2 or more files returned as missing information or incomplete in that quarter. The Field Inspector could earn another $2,000 bonus for have zero files returned as missing information or incomplete in that quarter. These $2,000 bonuses were "stacking," meaning, if the Field Inspector qualified for both, they received a $4,000 bonus for that quarter.

    c.  Tier 3 – Customer Service Bonus. If the Field Inspector maintains a customer satisfaction rate of 95% or higher during the quarter, they are entitled to a $2,000 bonus. If the Field Inspector maintains a customer satisfaction rate of 98% or higher during the quarter, they are entitled to another $2,000 bonus. These $2,000 bonuses were

"stacking," meaning, if the Field Inspector qualified for both, they received a $4,000 bonus for that quarter.

    a. Due to GES's failure to maintain procure customer service reviews for all of the property owners serviced by the Field Inspectors, and because of GES's inadequate recordkeeping of customer reviews, only negative customer service reviews are counted for purposes of determining the award of the Customer Service Bonus. A lack of a customer review will be deemed to be a satisfied customer for this purpose.

12. If after three months of employment a Field Inspector became eligible to participate in the bonus matrix mid-quarter, they would still be entitled to the full amount of bonuses available in that quarter pursuant to the plain language of the bonus matrix if they otherwise qualified for such bonuses. There is no language in the bonus matrix that prorates the amount of a bonus based on the date on which the Field Inspector first became eligible to participate during the quarter in question.

13. If a Field Inspector's employment ended during a calendar quarter and they otherwise qualified for a Tier 2 – Quality Bonus and/or a Tier 3 – Customer Service Bonus, they were entitled to a prorated amount of that bonus for the amount of days they were employed with GES during that quarter.

14. Defendant Global Estimating Services, Inc. ("GES") was the alter ego of Defendant Access Restoration Services US, Inc. ("ARS"). ARS and GES were affiliates of one other, due to having common ownership by members of the Gagliano family. ARS entered into a legally impermissible business agreement with the McClenny, Moseley & Associates Law Firm of Houston, Texas, in December 2021. Defendant GES was created the following month in conjunction with this business arrangement. None of the Field Inspectors were informed that the work they were doing and the assurance of payment for their work was based on unethical business arrangements between ARS, GES, and the MMA Law Firm. Therefore, ARS perpetrated an actual fraud on the Plaintiffs by creating GES and employing them through GES without disclosing the nature of these business relationships and the substantial risk that Plaintiffs were taking on by taking employment with GES.

**Q3-2022 (Burkey & Rudolph)**

15. During Q3-2022, neither David Burkey nor Tracy Rudolph performed enough inspections to earn a Tier 1 – Quantity Bonus, for Q3-2022.

16. During Q3-2022, David Burkey did not have any files returned as missing information or incomplete. Therefore, he earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

17. During Q3-2022, David Burkey had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, he earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

18.     During Q3-2022, Tracy Rudolph did not have any files returned as missing information or incomplete. Therefore, she earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

19.     During Q3-2022, Tracy Rudolph had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, she earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

**Q4-2022**

20.     During Q4-2022, GES failed to create or preserve adequate records to accurately memorialize the total number of inspections performed during that quarter by David Burkey and Tracy Rudolph. The inspection records produced by GES on both individuals did not identify the total number of inspections performed by them or for which they should receive credit in Q4-2022.

21.     Near the end of Q4-2022 while still in southwest Florida, GES Field Supervisor Lorenzo Mora told David Burkey that according to the information on Mora's tablet, Burkey had completed 407 inspections in that quarter.

22.     During Q4-2022, David Burkey completed 407 inspections. Based on this amount, he is entitled to a Quality Bonus of $43,050 for 287 inspections above 120 (287 x $150) as well as a $5,000 bonus for reaching 240 inspections. Burkey is therefore owed a total Tier 1 – Quantity Bonus of $48,050 for Q4-2022.

23.     For Q4-2022, Rudolph is entitled to credit for 344 inspections. Based on this total, Rudolph is entitled to a Tier 1 – Quality Bonus of $38,600 for 224 inspections above 120 ($150 x 224 = $33,600) as well as a $5,000 bonus for performing at least 240 inspections in the quarter. Therefore, she is entitled to a total Tier 1 – Quality Bonus of $38,600 for Q4-2022. The total number of inspections comes from the following findings:

   a. The ARS Inspection Credit tracking app in Rudolph's GES-issue phone identified 273 inspections by Rudolph in Q4-2022.

   b. Also during this quarter, Rudolph inspected a lobby and an office at the Fort Myers, Florida airport for which she was not given credit on the ARS Inspection Credit app, but for which she is entitled to credit as 2 additional inspections performed.

   c. Furthermore, at the Fort Myers airport, Rudolph inspected 7 warehouse structures, each of which was divided into two separate units, for which she is entitled to credit for 14 inspections.

   d. Furthermore, Rudolph took 4 days to inspect a fire station in Fort Myers, which, given the GES-approved credit she later received of 5 inspections per day when prevented from conducting a volume of inspections by other required duties, provides her credit for 20 inspections (5 inspection credits x 4 days).

    e. Furthermore, for the first 11 days of October 2022, while Rudolph was still working in Louisiana and before she relocated her work to southwest Florida, she had at least one inspection per day that was not properly recorded and tracked by GES, and is therefore entitled to credit for 10 additional inspections for that period of time.

    f. Lastly, Rudolph was required to work in the GES office in Spring, Texas, for one week in December 2022, from December 5-9. GES General Manager Autumn Garibay told her that if she would come to work in the GES office, which meant losing the opportunity to do field inspections and therefore earn more bonuses, GES would give Rudolph credit for 5 inspections per day while working at the GES office. Therefore, based on Garibay's representation, Rudolph is entitled to additional credit for 25 inspections for 5 business days working at the office in Spring during that week.

24. During Q4-2022, David Burkey did not have any files returned as missing information or incomplete. Therefore, he earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

25. During Q4-2022, David Burkey had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, he earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

26. During Q4-2022, Tracy Rudolph had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, she earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

27. During Q4-2022, Tracy Rudolph did not have any files returned as missing information or incomplete. Therefore, she earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

**Q1-2023**

28. During Q1-2023, Burkey and Rudolph did not complete more than 120 inspections in the quarter and therefore did not qualify for a Tier 1 – Quantity Bonus during this quarter.

29. During Q1-2023, David Burkey did not have any files returned as missing information or incomplete. Therefore, he earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

30. During Q1-2023, David Burkey had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, he earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

31. During Q1-2023, Tracy Rudolph did not have any files returned as missing information or incomplete. Therefore, she earned the full $4,000 bonus available under Tier 2 – Quality Bonus, for Q3-2022.

32.     During Q1-2023, Tracy Rudolph had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, she earned the full $4,000 bonus available under Tier 3 – Customer Service, for Q3-2022.

**Q2-2023**

33.     During Q2-2023, Burkey and Rudolph did not complete more than 120 inspections in the quarter and therefore did not qualify for a Tier 1 – Quantity Bonus during this quarter.

34.     During Q2-2023, David Burkey did not have any files returned as missing information or incomplete. Therefore, he earned the full bonus available under Tier 2 – Quality Bonus, for Q3-2022. However, because he worked in this quarter only from April 1-April 28, 2023, which is 30.8% of the quarter, he earned 30.8% of the full $4,000 Tier 2 Quality Bonus, which is $1,232.

35.     During Q2-2023, David Burkey had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, he earned the full bonus available under Tier 3 – Customer Service, for Q3-2022. However, because he only worked in this quarter from April 1-April 28, 2023, which is 30.8% of the quarter, he earned 30.8% of the full $4,000 Tier 2 Quality Bonus, which is $1,232.

36.     During Q2-2023, Tracy Rudolph did not have any files returned as missing information or incomplete. Therefore, she earned the full bonus available under Tier 2 – Quality Bonus, for Q3-2022. However, because she worked in this quarter only from April 1-April 28, 2023, which is 30.8% of the quarter, she earned 30.8% of the full $4,000 Tier 2 Quality Bonus, which is $1,232.

37.     During Q2-2023, Tracy Rudolph had no negative customer service reviews and therefore had a 100% customer satisfaction rate. Therefore, she earned the full bonus available under Tier 3 – Customer Service, for Q3-2022. However, because she worked in this quarter only from April 1-April 28, 2023, which is 30.8% of the quarter, he earned 30.8% of the full $4,000 Tier 2 Quality Bonus, which is $1,232.

**Louis's Bonuses**

38.     As a Field Supervisor, Rafael Louis was entitled to a bonus of 15% of the total bonus amount earned by the Field Inspector on his team.

39.     Louis's first quarter of bonus eligibility was Q3-2022.

40.     During Q3-2022 and Q4-2022, GES failed to adequately track the identity of Louis's team as well as the total number of inspections by GES Field Inspectors in order to be able to accurately calculate Louis's quarterly bonuses. That responsibility was the company's and, therefore, inferences will be made against GES due to that failure.

41.     In Q3-2022, there were 20 Field Inspectors employed by GES at that time, along with 3 Field Supervisors (including Louis). Therefore, there is a presumption that Louis would have been

a supervisor to 7 Field Inspectors, who each earned the full Customer Service and Quality Bonuses, totaling $8,000. No Field Inspectors exceeded 120 inspections in Q3-2022. Therefore, Louis is entitled to Q3-2022 Field Supervisor Bonus of $8,400 (7 x $8,000 = $56,000 x .15).

42. During Q4-2022, Louis is presumed to have supervised 7 Field Inspectors, even though the Field Inspectors he was assigned to supervise would fluctuate throughout the quarter. Therefore, based on his understanding that the maximum bonus amount per quarter for a Field Inspector was $30,000, he is entitled to a Field Supervisor bonus of $31,500 for Q4-2022. ($30,000 x 7 = $210,000 x 0.15)

43. During Q1-2023, Louis worked in that quarter until his employment ended on March 13, 2023. Therefore, Louis only worked for 80% of Q1-2023.

44. During Q1-2023, no Field Inspectors earned a Tier 1 – Quantity Bonus. However, all Field Inspectors earned the full Tier 2 and Tier 3 bonuses. Furthermore, Louis had 7 specifically identified team members during this quarter, all of whom earned their full Customer Service and Quality Bonuses ($8,000 each). Therefore, Louis therefore earned the prorated amount of $8,400 for his Field Supervisor bonus for his work during 80% of Q1-2023 ($8,000 x 7 = $56,000 x 0.15 x 0.8).

**FLSA overtime**

45. GES was the W-2 employer of Burkey and Rudolph and is a defendant responsible for any overtime wages and damages owed to them.

46. GES is an enterprise that, during the time period relevant to this dispute, had employees engaged in commerce or in the production of goods for commerce, or that had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person.

47. In the calendar year 2022, GES was an enterprise whose annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

48. ARS is an enterprise that, during the time period relevant to this dispute, had employees engaged in commerce or in the production of goods for commerce, or that had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person.

49. In the calendar year 2022, ARS was an enterprise whose annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

50. During the time period relevant to Plaintiffs' claims, Defendant ARS was a corporation acting directly or indirectly in the interest of an employer in relation to Burkey and Rudolph during

Q4-2022, the quarter for which they claim unpaid overtime wages, for purposes of liability under the Fair Labor Standards Act.

51. During the time period relevant to Plaintiffs' claims, Defendant Nathan Normoyle was a person acting directly or indirectly in the interest of an employer in relation to Burkey and Rudolph during Q4-2022, the quarter for which they claim unpaid overtime wages, for purposes of liability under the Fair Labor Standards Act.

52. During the time period relevant to Plaintiffs' claims, Defendant Michael Needham was a person acting directly or indirectly in the interest of an employer in relation to Burkey and Rudolph during Q4-2022, the quarter for which they claim unpaid overtime wages, for purposes of liability under the Fair Labor Standards Act.

53. For Q4-2022, GES failed to keep adequate and accurate records of the start and stop times of the work periods for Plaintiffs Burkey and Rudolph. Therefore, the employees' good faith estimates of their overtime hours provided evidence of their total overtime hours worked.

54. In Q4-2022, based on just and reasonable inference, Burkey worked 84 hours for each of 8 workweeks in Q4-2022, and therefore 44 hours of overtime in each of those workweeks. When Burkey's bonuses are factored in to calculate his regular rate for purposes of his unpaid overtime wages in Q4-2022, the following calculations are made to calculate his unpaid overtime wages:

> Total Q4-2022 compensation (salary + bonuses) = $76,550
> Average weekly rate ($76,550 ÷ 13 weeks) = $5,888.46
> Hourly rate in overtime weeks ($5,888.46 ÷ 84 hours) = $70.10/hour
> Half-time rate in overtime weeks ($70.10 ÷ 2) = $35.05/hour
> Unpaid overtime wages ($35.05 x 44 OT hrs x 8 wks) = **$12,337.60 unpaid OT wages**

55. The Court finds that all four Defendants lacked a good faith basis for their decision not to pay overtime wages to Burkey in his position as a Field Inspector.

56. In Q4-2022, based on just and reasonable inference, Rudolph worked 84 hours for each of 8 workweeks in Q4-2022, and therefore 44 hours of overtime in each of those workweeks. When Rudolph's bonuses are factored in to calculate her regular rate for purposes of her unpaid overtime wages for Q4-2022, the following calculations are made to calculate her unpaid overtime wages:

> Total Q4-2022 compensation (salary + bonuses) = $61,850
> Average weekly rate ($61,850 ÷ 13 weeks) = $4,757.69
> Hourly rate in overtime weeks ($4,757.69 ÷ 84 hours) = $56.64/hour
> Half-time rate in overtime weeks ($56.64 ÷ 2) = $28.32/hour
> Unpaid overtime wages ($28.32 x 44 OT hrs x 8 wks) = **$9,968.64 unpaid OT wages**

57. The Court finds that all four Defendants lacked a good faith basis for their decision not to pay overtime wages to Rudolph in her position as a Field Inspector.

## PROPOSED CONCLUSIONS OF LAW

**Breach of Contract (all Plaintiffs)**

1. GES and Burkey had a valid and enforceable incentive compensation agreement, for which Burkey performed.

    a. A unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs. *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 676 (N.D. Tex. 2021) (in the context of a sales commission plan), citing *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).

2. Pursuant to that incentive compensation agreement, Burkey earned bonuses totaling $74,514 for his work as a Field Inspector for GES. GES failed to pay these bonuses due to Burkey. Therefore, GES breached the parties' incentive compensation agreement, causing Burkey contract damages in the amount of $74,514 for which GES is liable. Defendant ARS is jointly liable for this amount, as GES was the alter ego of ARS.

    a. "The elements of a breach-of-contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Tamasy v. Lone Star Coll. Sys.*, 635 S.W.3d 702, 708 (Tex. App. – Houston [14th Dist.] 2021).

3. GES and Rudolph had a valid and enforceable incentive compensation agreement, for which Rudolph performed.

    a. A unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs. *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 676 (N.D. Tex. 2021) (in the context of a sales commission plan), citing *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).

4. Pursuant to that incentive compensation agreement, Rudolph earned bonuses totaling $65,064 for her work as a Field Inspector for GES. GES failed to pay these bonuses due to Rudolph. Therefore, GES breached the parties' incentive compensation agreement, causing Rudolph contract damages in the amount of $65,064 for which GES is liable. Defendant ARS is jointly liable for this amount, as GES was the alter ego of ARS.

    a. "The elements of a breach-of-contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Tamasy v. Lone Star Coll. Sys.*, 635 S.W.3d 702, 708 (Tex. App. – Houston [14th Dist.] 2021).

5. GES and Louis had a valid and enforceable incentive compensation agreement, for which Louis performed.

   a. A unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs. *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 676 (N.D. Tex. 2021) (in the context of a sales commission plan), citing *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).

6. Pursuant to that incentive compensation agreement, Louis earned bonuses totaling $46,620 for his work as a Field Supervisor for GES. GES failed to pay these bonuses due to Louis. Therefore, GES breached the parties' incentive compensation agreement, causing Louis contract damages in the amount of $46,620 for which GES is liable. Defendant ARS is jointly liable for this amount, as GES was the alter ego of ARS.

   b. "The elements of a breach-of-contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Tamasy v. Lone Star Coll. Sys.,* 635 S.W.3d 702, 708 (Tex. App. – Houston [14th Dist.] 2021).

**FLSA (Burkey & Rudolph)**

7. Plaintiffs Burkey and Rudolph in the position of Field Inspector were not exempt from the overtime provisions of the Fair Labor Standards Act.

   a. Defendants did not plead any FLSA exemptions for the Field Inspector position as an affirmative defense.

   b. An FLSA exemption is an affirmative defense that must be pled. Donovan v. Hamm's Drive Inn, 661 F.2d 316, 317 (5th Cir. 2013). *Patterson v. O'Bar Wrecker Serv., LLC,* 685 F. Supp. 3d 387, 397 (N.D. Tex. 2023).

8. Defendants GES and ARS are covered enterprises under the Fair Labor Standards Act.

   a. 29 U.S.C. §203(s)(1)(A). "(1)'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that—(A) (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)…"

9. During the time period relevant for the overtime claims of Plaintiffs Burkey and Rudolph, Defendants GES, ARS, Normoyle, and Needham were "employers" as to Burkey and Rudolph, as "employer" is defined by the Fair Labor Standards Act, and therefore bear joint and several liability

10

for all damages awarded Burkey and Rudolph under the FLSA. Furthermore, Defendant ARS also bears liability for the damages against Defendant GES, due to the fact that GES was the alter ego of ARS.

   a. "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. 29 U.S.C. §203 (d).

10. Plaintiffs Burkey and Rudolph worked overtime hours for which they were required to have been paid a time-and-one-half premium rate, but were not.

11. By failing to pay the required overtime premium for hours over 40 in a workweek, Defendants GES, ARS, Normoyle, and Needham violated the Fair Labor Standards Act as to Plaintiffs Burkey and Rudolph.

   a. 29 U.S.C. §207(a): "(1)Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

12. Because Burkey and Rudolph agreed to be paid a fixed salary of $82,000 per year for hours that would vary weekly, their unpaid overtime wages are calculated using the fluctuating workweek method.

   a. The FWW method of calculating overtime premiums in a misclassification case is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours. See *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138 (5th Cir. 1988); 29 C.F.R. § 778.114(a), 29 C.F.R. § 778.109.

13. Using the fluctuating workweek method, Plaintiff Burkey is entitled to unpaid overtime wages in the amount of $12,337.60.

14. Defendants did not demonstrate a good faith basis for failing to pay overtime wages to Plaintiff Burkey. Therefore, the Court awards liquidated damages to Burkey in the amount of $12,337.60, against all four Defendants jointly and severally.

   a. "The employer faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 267 (5th Cir. 1998). "And, the award of liquidated damages remains within the discretion of the trial court; even if the district court determines that

the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages." *Id.*

15.     Using the fluctuating workweek method, Plaintiff Rudolph is entitled to unpaid overtime wages in the amount of $9,968.64**.**

16.     Defendants did not demonstrate a good faith basis for failing to pay overtime wages to Plaintiff Rudolph. Therefore, the Court awards liquidated damages to Rudolph in the amount of $12,337.60, against all four Defendants jointly and severally.

   a. "The employer faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 267 (5th Cir. 1998). "And, the award of liquidated damages remains within the discretion of the trial court; even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages." *Id.*

**Alter Ego**

17.     Defendant GES was acting as the alter ego of Defendant ARS. ARS perpetrated an actual fraud on Plaintiffs be employing them through GES to assist ARS in engaging a legally impermissible business relationship without disclosing such relationship to Plaintiffs. This put Plaintiffs at a significant risk of non-payment for their earned compensation. Therefore, ARS is jointly and severally liable for all damages awarded Plaintiffs against GES.

   a. Texas law states that ARS may be liable for GES's contractual debts if an "affiliate caused [GES] to be used for the purpose of perpetrating and did perpetrate an actual fraud on [Plaintiffs] primarily for the direct personal benefit of the…**affiliate**." TEX. BUS. ORG. CODE § 21.223 (emphasis added). "'Actual fraud' is defined as 'involv[ing] dishonesty of purpose or intent to deceive.'" *AHBP LLC v. Lynd Co.,* 649 F. Supp. 3d 371, 387 (W.D. Tex. 2023), citing *Spring St. Partners–IV, L.P. v. Lam,* 730 F.3d 427, 442 (5th Cir. 2013). "[I]n the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud." *Latham v. Burgher,* 320 S.W.3d 602, 607 (Tex. App. – Dallas 2010, no pet.). Indeed, "the requirements for showing actual fraud are *less* burdensome than those for establishing fraud." *Weston Grp., Inc. v. Sw. Home Health Care, LP,* No. 3:12-CV-1964-G, 2014 WL 940329, at *2 (N.D. Tex. Mar. 11, 2014) (emphasis added).

**Post-trial issues**

1.     Plaintiff Burkey, Rudolph, and Louis are entitled to their reasonable attorney fees, to be determined on submission following the Court's issuance of its preliminary judgment.

2.     Plaintiffs Burkey, Rudolph, and Louis are entitled to their pre-judgment and post-judgment interest, to be awarded on submission following the Court's issuance of its preliminary judgment.

Respectfully submitted,

*Kerry O'Brien*

**Kerry V. O'Brien**
Texas Bar No. 24038469
SDTX Bar No. 021724
Attorney-in-Charge

Board Certified in Labor & Employment Law by the TBLS



1011 Westlake Drive
Austin, Texas 78746
email: ko@obrienlawpc.com
phone: (512) 410-1960
fax: (512) 410-6171

**COUNSEL FOR PLAINTIFFS**