IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| C. BUTLER, *et al.*,<br>　*Plaintiffs*, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:23-cv-01936 |
| ACCESS RESTORATION SERVICES US,<br>INC., *et al.*,<br>　*Defendants*. | §<br>§<br>§<br>§<br>§ | |

**DEFEFNDANTS' PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

COME NOW Defendants, ACCESS RESTORATION SERVICES US, INC., GLOBAL ESTIMATING SERVICES, INC., NATHAN NORMOYLE and MICHAEL NEEDHAM (collectively, "Defendants"), hereby request that the Court sign and enter the following Findings of Fact and Conclusions of Law:

**PROPOSED FINDINGS OF FACT**

1. Plaintiffs Tracy Rudolph, David Burkey, and Rafael Louis (collectively, "Plaintiffs") were employed by Global Estimating Services, Inc. ("GES"). Defense Exs. 1, 2, 3, 4.

2. Each of the Plaintiffs entered into a separate written employment agreement with GES, which covered the services that were to be provided by Plaintiffs to GES. Defense Exs. 1, 2, 3, 4.

3. Plaintiffs did not have an employment contract with Access Restoration Services, U.S., Inc. ("ARS"). Defense Exs. 1, 2, 3, 4; Dkt. No. 48, Ex. A.

4. Plaintiffs were not employees of ARS. Defense Exs. 1, 2, 3, 4; Dkt. No. 48,

1

Ex. A.

5. The obligations to pay wages and bonuses earned by Plaintiffs, if any, were solely the obligations of GES. Defense Exs. 1, 2, 3, 4; Dkt. No. 48, Ex. A.

6. ARS had no obligation to pay wages or bonuses to Plaintiffs. Defense Exs. 1, 2, 3, 4; Dkt. No. 48, Ex. A.

7. GES is not ARS's subsidiary. Dkt. No. 48 Ex. A, Ex. C.

8. GES was not funded by ARS. Dkt. No. 48 Ex. A; Dkt. 52 Ex. B at 181:2-23, Ex. D 99:24,

9. GES and ARS are separate, distinct legal entities. Dkt. No. 48 Ex. A, Ex. C.

10. ARS and GES provided different services to different customer bases. Dkt. No. 48 Ex. A, Ex. B at 23:5-24; Ex. B at 182:23-183:8; Ex. C.

11. ARS and GES maintained separate bank accounts and separate accounting records. Dkt. No. 48 Ex. D at 177:1-8.

12. ARS did not draft the Bonus Plan under which Plaintiffs are seeking to recover bonuses. Dkt. No. 52, Ex. D 147:2-15, 159:17-25.

13. ARS did not make the decision to shut down GES operations. Dkt. No. 52, Ex. D p.177:1-15.

14. ARS did not pay Plaintiffs a salary or provide benefits to Plaintiffs. Dkt. No. 52, Ex. C.

15. Autumn Garibay and Laura Holt were not employed by ARS. Dkt. No. 52, Ex. C.

16. ARS did not have the power to hire and fire Plaintiffs. Dkt No. 52, Ex. B

2

185:2-25, Ex. D 177:1-8.

17. ARS did not supervise Plaintiffs' schedules or conditions of employment. Dkt. No. 52 Ex. C.

18. Scott Jacobi was not employed by GES. Dkt. No. 48, Ex. A; Dkt. No. 52 Ex. B, 27:3-8.

19. GES provided Plaintiff with the drones, vehicles, and other equipment they used for inspections. Dkt. 48 Ex. C.

20. ARS did not buy drones, vehicles, and other equipment for GES inspectors. Dkt. No. 52, Ex. D 188:1-23.

21. GES maintained records of Plaintiffs' employment, including hours worked and inspections performed.

22. ARS did not maintain Plaintiffs' employment records. Dkt. No. 52, Ex. B, p.50, 55-57.

23. ARS did not willfully interfere with any employment contract Plaintiffs signed with GES. Dkt. No. 52, Ex. D 177:1-15.

24. ARS did not cause Plaintiffs or GES to fail to perform under the terms of the Bonus Plan. Dkt. No. 52, Ex. D 177:1-15.

25. The services Plaintiffs provided while employed by GES were not for the benefit of ARS. Dkt. No. 52, Ex. C-1, C-4, C-5.

26. ARS did not accept services performed by the Plaintiffs. Dkt. 48, Ex. A.

27. ARS had no reason to believe that Plaintiffs expected compensation from ARS for the work they performed as Field Inspectors and/or Field Supervisors. Dkt. 48,

Ex. A; Dkt. 52, Ex. C.

28. ARS did not make any promise to Plaintiffs regarding bonus payments or overtime payments. Dkt. 48, Ex. A.

29. In March 2022, Mike Needham handed over day-to-day management responsibilities for GES to GES's General Manager Autumn Garibay. Dkt. No. 52, Ex. D 147:2-15, 159:17-25.

30. Autumn Garibay and Laura Holt were employed by GES. Dkt. 52, Ex. C-2 (for Autumn Garibay); Dkt. 52, Ex. D p.169:23-25; Ex. E 30:20-25 (forLaura Holt).

31. Autumn Garibay and Laura Holt monitored and controlled Plaintiffs' schedules. Dkt No. 52 Ex. E, H, I, J1-9, C-9.

32. David Burkey never interacted with Mike Needham. Dkt. No. 52, Ex. J1-9.

33. Tracy Rudolph never interacted with Mike Needham. Dkt. No. 52, Ex. J1-9.

34. Needham did not interact with Plaintiffs. Dkt. No. 52, Ex. J1-9.

35. Needham did not hire or fire Plaintiffs. Dkt. No. 52, Ex. J1-9.

36. Needham did not control Plaintiffs' work schedules and employment conditions. Dkt. No. 52, Ex. J1-9.

37. Needham did not determine Plaintiffs' salaries. Dkt. No. 52, Ex. C.

38. Needham did not maintain Plaintiffs' employment records. Dkt. No. 48 Ex. D at 177:1-8.

39. Needham did not have oversight of Plaintiffs' performance of the terms of the Bonus Plan and Bonus Matrix. Dkt. No. 52, Ex. D 147:2-15, 159:17-25.

40. Needham did not make the decision to shut down GES. Dkt. No. 52, Ex. D

p.177:1-15.

41. David Burkey never interacted with Nathan Normoyle. Dkt. No. 52, Ex. J1-9.

42. Rafael Louis never interacted with Nathan Normoyle. Dkt. No. 52, Ex. J1-9.

43. Tracy Rudolph never interacted with Normoyle. Dkt. No. 52, Ex. J1-9.

44. Normoyle did not interact with Plaintiffs. Dkt. No. 52, Ex. J1-9.

45. Normoyle did not hire or fire Plaintiffs. Dkt. No. 52, Ex. J1-9.

46. Normoyle did not control Plaintiffs' work schedules and employment conditions. Dkt. No. 52, Ex. J1-9.

47. Normoyle did not determine Plaintiffs' salaries. Dkt. No. 52, Ex. C.

48. Normoyle did not maintain Plaintiffs' employment records. Dkt. No. 52, Ex. B, p.50, 55-57.

49. Normoyle did not have oversight of Plaintiffs' performance of the terms of the Bonus Plan and Bonus Matrix. Dkt. No. 52, Ex. D 147:2-15, 159:17-25.

50. Normoyle did not make the decision to shut down GES. Dkt. No. 52, Ex. D p.177:1-15.

51. Plaintiff David Burkey was employed by GES as a Field Inspector from May 31, 2022 to April 28, 2023, with a salary of $82,000 per year. Defense Ex. 1 (for start date); Dkt. No. 52, Ex. C (for salary information).

52. David Burkey did not become eligible to participate in the Bonus Plan until August 31, 2022. Defense Ex. 1.

53. David Burkey was not eligible to earn a bonus for any inspections performed

5

prior to August 31, 2022. Defense Ex. 1.

54.    Plaintiff Tracy Rudolph was employed by GES from May 23, 2022 to April 28, 2023, with a salary of $82,000 per year. Defense Ex. 2.

55.    Tracy Rudolph did not become eligible to participate in the Bonus Plan until August 23, 2022. Defense Ex. 2.

56.    Tracy Rudolph was not eligible to earn a bonus for any inspections performed prior to August 23, 2022. Defense Ex. 2.

57.    Plaintiff Rafael Louis was employed by GES from May 15, 2022 to March 13, 2023, with a salary of $82,000 per year until June 30, 2022, and on July 1, 2022, he was promoted to the position of Field Supervisor, with a salary rate of $87,000 per year. Defense Exs. 3, 4.

58.    Rafael Louis was promoted to Field Supervisor on June 27, 2022. Defense Ex. 4.

59.    In addition to their salary, GES paid health benefits to Plaintiffs. Defense Exs. 1, 2, 3, 4

60.    GES exercised substantial control over the Plaintiffs. Dkt. No. 52 Ex. C, J.

61.    ARS, Normoyle, and Needham did not exercise substantial control over the Plaintiffs. Dkt. No. 52 Ex. C, J.

62.    Plaintiffs depended economically on GES. Dkt. No. 52 Ex. C, J.

63.    Plaintiffs did not depend economically on ARS, Normoyle, and/or Needham. Dkt. No. 52 Ex. C, J.

64.    Rafael Louis was not eligible for any bonus as a Field Inspector in 2022.

Defense Exs. 3, 4.

65. Rafael Louis was only eligible for a bonus, if any, as a Supervisor for GES. Defense Exs. 3, 4.

66. GES Supervisors were entitled to receive a portion of the bonuses earned by Field Inspectors under their supervision in a given quarter. Plaintiffs Exhibit 8; Defense Exs. 4, 9.

67. The controlling terms of the bonus plan are set out in an email sent to the Plaintiffs by GES General Manager Autumn Garibay on August 9, 2022. Plaintiffs Ex. 10; Defense Ex. 14.

68. Autumn Garibay was employed by GES as its General Manager. Dkt. 52, Ex. C-2.

69. The Bonus Plan had three tiers: Tier 1 (quantity), Tier 2 (quality), Tier 3 (customer service). Plaintiffs Ex. 10; Defense Ex. 14.

70. Plaintiffs were not eligible for the second tier of the Bonus Plan unless and until they achieved the first tier of the Bonus Plan. Plaintiffs Ex. 10; Defense Ex. 14.

71. Plaintiffs were not eligible for the third tier of the Bonus Plan unless and until they achieved the second tier of the Bonus Plan. Plaintiffs Ex. 10; Defense Ex. 14.

72. The first tier of the quarterly Bonus Plan established a threshold quantity of inspections that inspectors had to complete in each quarter (120), after which they were earned $150.00 per inspection for inspection #120 through inspection #240. Plaintiffs Ex. 10; Defense Ex. 14.

73. Plaintiffs were not entitled to a $150.00 per inspection bonus for completing

less than 120 inspections in a quarter. Plaintiffs Ex. 10; Defense Ex. 14.

74. After becoming eligible to participate in the Bonus Plan, Plaintiffs were only entitled to a one-time quarterly bonus of $5,000.00 if they completed 240 or more inspections in that quarter. Plaintiffs Ex. 10; Defense Ex. 14.

75. Plaintiffs were not entitled to $150.00 per inspection after they completed 240 inspections in one quarter. Plaintiffs Ex. 10; Defense Ex. 14.

76. GES had the authority to deny inspection credit for Field Inspectors for shoddy work, blurry photos, or inspection work that had to be redone by another inspector. Plaintiffs Ex. 10; Defense Ex. 14.

77. The second tier of the Bonus Plan was based upon a GES manager assessing the thoroughness and completeness of Plaintiffs' work. Plaintiffs Ex. 10; Defense Ex. 14.

78. A GES Field Manager tracked the number of inspections completed by Field Inspectors. Defense Exs 7, 8, 9.

79. Plaintiffs did not perform at least 120 inspections each in Q3 of 2022. Defense Ex. 7.

80. There is no evidence that Plaintiffs at least 120 inspections each in Q1 of 2023.

81. There is no evidence that Plaintiffs performed at least 120 inspections each in Q2 of 2023.

82. GES tracked the completeness of inspections in Q3 and Q4 of 2022. Defense Exs 7, 8, 9.

83. GES did not start tracking customer service feedback until Q4 of 2022.

8

Plaintiffs Ex. 10; Defense Ex. 14.

84. GES determined that Plaintiffs Rudolph and Burkey did not meet the criteria to earn a Quality Bonus and a Customer Service Bonus in any quarter in which they were eligible to receive such a bonus. Defense Exs 7, 8, 9.

85. Laura Holt was employed by GES as its Field Manager. Dkt. 52, Ex. D p.169:23-25; Ex. E 30:20-25.

86. GES Field Manager Laura Holt calculated the amounts earned by GES employees under the Bonus Plan. Defense Exs. 7, 8, 9.

87. Holt correctly allocated bonus amounts for all completed inspections, including the prerequisites such as threshold number of inspections, maximum inspections counted, quality of site documentation, and customer service surveys, under the Bonus Plan. Defense Exs. 7, 8, 9.

88. Laura Holt was incentivized to accurately calculate the Plaintiffs' bonuses because her bonus calculation was derived from the bonuses of the GES employees who worked under her, including the Plaintiffs. Defense Ex. 9, BL4175.

89. Plaintiffs have admitted that they worked overtime, if at all, only in Quarter 4 of 2022; Dkt. 52, Ex. F.

90. Plaintiffs did not earn or qualify for quality bonuses (tier 2) in any quarter. Plaintiffs Ex. 10; Defense Ex. 14.

91. Plaintiffs did not earn or qualify for customer service bonuses (tier 3) in any quarter. Plaintiffs Ex. 10; Defense Ex. 14.

92. Plaintiff David Burkey is entitled to $23,000 in total bonuses for Q4 of 2022.

Defense Ex. 8. He performed 355 inspections in Q4 of 2022; for inspections number 121 through 240, he earned $150 per inspection; for any inspections over 240, Plaintiff Burkey is limited to a $5000 "top out" bonus. Defense Exhibit 14.

93. There is no evidence that Plaintiff Burkey qualified for a customer service or quality assurance bonus in Q3 of 2022, Q4 of 2022, or Q1 of 2023.

94. Plaintiff Louis is entitled to $11,400 for a Supervisor Bonus in Q4 of 2022. Defense Ex. 9, 14.

95. There is no evidence that any inspectors under Plaintiff Louis earned or were entitled to bonuses in Q3 of 2022, or Q1 of 2023.

96. Plaintiff Rudolph is entitled to $21,400 in total bonuses for Q4 of 2022. She performed 236 inspections in Q4 of 2022. Defense Ex. 8.

97. There is no evidence that Plaintiff Rudolph qualified for a customer service or quality assurance bonus in Q3 of 2022, Q4 of 2022, or Q1 of 2023.

## PROPOSED CONCLUSIONS OF LAW

1. Each Plaintiff has a valid and enforceable contract with GES.

2. Plaintiffs accepted the terms of the Bonus Plan as communicated to them in the email of August 9, 2022, from Autumn Garibay of GES.

3. None of the Plaintiffs had valid and enforceable contracts with ARS. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019).

4. All conditions precedent did not occur for Plaintiffs to prevail on their breach of contract claims. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)

5. GES did not breach the contracts between it and Plaintiffs. *Id.*

6. No breach of contract by GES caused damage to any of the Plaintiffs. *Id.*

7. Because Plaintiffs had valid, express contracts with GES covering the services provided by Plaintiffs, Plaintiffs cannot maintain quantum meruit claims against any Defendant, and such claims fail as a matter of law. *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430 (5th Cir. 2024) (citing *Woodward v. Sw. States, Inc.* 384 S.W.2d 674, 675 (Tex. 1964)).

8. Because Plaintiffs had valid, express contracts with GES setting forth GES's obligations and promises, Plaintiffs cannot maintain promissory estoppel claims against any Defendant, and such claims fail as a matter of law. *Id.*

9. ARS was not unjustly enriched by any act or omission of any Plaintiff or other Defendant. Dkt. 52, Ex. C.

10. ARS did not willfully or intentionally interfere with any of the Plaintiffs' contracts with GES. *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

11. No act or omission by ARS was a proximate cause of any injury to any Plaintiff. *Id.*

12. GES is not ARS's subsidiary. Dkt. 52, Ex. C.

13. GES did not engage in actual fraud. *Birdas S.A.P.I.C. v. Gov't of Turkmenistan ("Birdas I"),* 345 F.3d 347, 359 (5th Cir. 2003)); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210 (5th Cir. 1993).

14. ARS did not engage in actual fraud. *Id.*

15. GES is not a sham entity.

11

16. GES was not ARS's alter ego. *Birdas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) ("*Birdas* II") (citing *In re Multiponics, Inc.,* 622 F.2d 709, 724–25 (5th Cir. 1980)).

17. ARS was not GES's alter ego. *Id.*

18. ARS, Normoyle, and Needham do not qualify as "employers" under federal overtime law. *See Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118–19 (5th Cir.1993); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Kaminski v. BWW Sugar Land Partners*, Civ. A. No. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010).

19. ARS is not liable to Plaintiffs for any damages under the FLSA. *Id.*

20. Normoyle is not liable to Plaintiffs for any damages under the FLSA. *Id.*

21. Needham is not liable to Plaintiffs for any damages under the FLSA. *Id.*

22. No employee or agent of GES acted willfully in failing to pay wages Plaintiffs claim were due to them. *Id.*

23. Plaintiffs were not economically dependent on ARS under the FLSA. *Id.*

24. Plaintiffs were not economically dependent on Michael Needham under the FLSA. *Id.*

25. Plaintiffs were not economically dependent on Nathan Normoyle under the FLSA. *Id.*

26. ARS did not act as Plaintiffs' employer by controlling the activities of Plaintiffs, including their schedules, rate of payment, method of payment, or conditions of employment. *Id.*

27. Michael Needham did not act as Plaintiffs' employer by controlling the activities of Plaintiffs, including their schedules, rate of payment, method of payment, or conditions of employment. *Id.*

28. Nathan Normoyle did not act as Plaintiffs' employer by controlling the activities of Plaintiffs, including their schedules, rate of payment, method of payment, or conditions of employment. *Id.*

29. Based on the totality of the circumstances, ARS was not Plaintiffs' joint employer under the FLSA. *Id.*

30. Based on the totality of the circumstances, Michael Needham was not Plaintiffs' joint employer under the FLSA. *Id.*

31. Based on the totality of the circumstances, Nathan Normoyle was not Plaintiffs' joint employer under the FLSA. *Id.*

32. ARS did not violate the FLSA. *Id.*

33. Normoyle did not violate the FLSA. *Id.*

34. Needham did not violate the FLSA. *Id.*

35. Plaintiffs have not incurred any actual damage or loss which was proximately caused by an act or omission by ARS.

36. Plaintiffs have not incurred any actual damage or loss which was proximately caused by an act or omission by Normoyle.

37. Plaintiffs have not incurred any actual damage or loss which was proximately caused by an act or omission by Needham.

38. Plaintiffs have failed to present admissible evidence of reasonable and

necessary attorneys' fees.

39. Plaintiffs are not entitled to recover attorneys' fees.

40. Plaintiffs have not presented admissible, clear and convincing evidence that they suffered harm because of fraud or malice by any Defendant.

41. Plaintiffs are not entitled to recover punitive damages.

42. Any Finding of Fact which is actually a Conclusion of Law shall be deemed a Conclusion of Law. Any Conclusion of Law which is actually a Finding of Fact shall be deemed a Finding of Fact.

Respectfully submitted,

ANDREWS MYERS, P.C.

By: */s/ Lisa M. Norman*
LISA M. NORMAN
State Bar No. 24037190
Federal Bar No. 613906
lnorman@andrewsmyers.com
VED D. CHITALE
State Bar No. 24099613
Federal Bar No. 315794
vchitale@andrewsmyers.com
MATTHEW A. PYLE
State Bar No. 24123135
Federal Bar No. 3839342
mpyle@andrewsmyers.com
1185 Saint James Place, 15th Floor
Houston, TX 77056
713-850-4200 Telephone
713-850-4211 Facsimile

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

  I certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was forwarded to all counsel of record via electronic/ECF delivery on this 2nd day of April, 2025:

  Kerry V. O'Brien
  1011 Westlake Drive
  Austin, Texas 78746

           */s/ Lisa M. Norman*
           LISA M. NORMAN